UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cr-00189-JRO-MG |
| | ) | |
| CHRISTOPHER CLEGG, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING MOTION TO SUPPRESS**

Before the Court is Defendant Christopher Clegg's Motion to Suppress Evidence and Request for *Franks* Hearing. Dkt. [35]. Clegg moves to suppress all evidence resulting from the July 1, 2025, search of his home. He argues that the warrant, supported by an informant's tip, did not establish a sufficient nexus between criminal activity and his home. Clegg also requests a *Franks* Hearing to determine whether omission of the informant's criminal history in the probable cause affidavit was material and whether it was intentional or reckless.

The material facts are undisputed.[1] Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law. For the following reasons, Clegg's motion, dkt. [35], is **DENIED**.

---

[1] The Court can resolve the motion to suppress without an evidentiary hearing because the material facts are not in dispute. *See United States v. Juarez*, 454 F.3d 717, 719–20 (7th Cir. 2006) (finding no evidentiary hearing required on suppression motion unless defendant "provide[s] sufficient information to enable the court to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion"); *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018) (An evidentiary hearing is required "only when a substantial claim is

## I. BACKGROUND AND FINDINGS OF FACT

The Government has charged Clegg with three counts: Possession with Intent to Distribute Controlled Substances under 21 U.S.C. § 841(a)(1) (Count I); Possession of a Firearm in Furtherance of a Drug Trafficking Crime under 18 U.S.C. § 924(c) (Count II); and Unlawful Possession of a Firearm by a Convicted Felon under 18 U.S.C. § 922(g) (Count III). Dkt. 1.

In June 2025, Indianapolis Metropolitan Police ("IMPD") Officer Fankboner, a member of the Southeast District Violence Reduction Team ("VRT"), was dispatched to 3810 Aloda Street (the "Aloda Residence") based on a domestic disturbance call from the phone number ending in 2730. Dkt. 34 at 3; Dkt. 36 at 5; Dkt. 34-1 at 6. When IMPD arrived in response, the female involved was not present and the male, named Chris, told IMPD that officers were no longer needed. Dkt. 34 at 3; Dkt. 34-1 at 6. But while responding to the domestic call, Officer Fankboner recognized an individual named Jason Atkins, whom Fankboner had "previous narcotics related dealings with." Dkt. 34 at 3; Dkt. 34-1 at 6.

Officers of the VRT conducted surveillance of the Aloda Residence. *See* dkt. 34-1 at 6. On July 1, 2025, IMPD officers observed a white male "come from the direction" of the residence, get into a truck, and drive away. *Id.* IMPD officers initiated a traffic stop on the truck for expired license plates and failure to come a complete stop at a red light. *Id.* IMPD officers identified the driver as Timmy

---

presented and there are disputed issues of material fact that will affect the outcome of the motion.").

Comstock. *Id.* A police K-9 arrived on the scene and alerted IMPD officers to the presence of narcotics in Comstock's truck. *Id.* A search of the truck yielded, among other drugs and contraband, a plastic bag containing one pound of methamphetamine. *Id.* at 4; Dkt. 36 at 5. On his own initiative, Comstock stated that he wanted to talk. Dkt. 34 at 4; Dkt. 34-1 at 7. He was Mirandized and transported to the police station for an interview. Dkt. 34 at 4; Dkt. 34-1 at 7.

During the interview, Comstock told IMPD officers that someone known as Chris Clegg, who rents the Aloda Residence, provided him with a pound of methamphetamine on credit. Dkt. 34 at 4; Dkt. 36 at 6; Dkt. 34-1 at 8. Per Comstock, he and Clegg previously engaged in this arrangement where Clegg would provide Comstock the drugs and then Comstock would pay Clegg later. Dkt. 34 at 4; Dkt. 36 at 6; Dkt. 34-1 at 8. Comstock informed IMPD officers that a woman known as "D" had just dropped off narcotics at the Aloda Residence before Comstock left. Dkt. 34 at 5; Dkt. 36 at 6; Dkt. 34-1 at 8. Comstock also told IMPD officers that Clegg had an AK-style firearm and handguns in his house. Dkt. 34 at 5; Dkt. 36 at 6; Dkt. 34-1 at 8.

Comstock next showed IMPD officers his phone. It had the contact information of "Chris" with a listed phone number ending in 2730—the same number of the male who made the June 2025 domestic disturbance call to IMPD from the Aloda Residence. Dkt. 34 at 5; Dkt. 36 at 6; Dkt. 34-1 at 8. Comstock also identified Clegg from a photo array as the one who distributed drugs from the Aloda Residence. Dkt. 34 at 5; Dkt. 36 at 6; Dkt. 34-1 at 9. IMPD officers determined that Clegg had a prior conviction for burglary, which rendered him a

Serious Violent Felon and prohibited from possessing a firearm. Dkt. 34 at 5; Dkt. 34-1 at 8.

Officer Fankboner drafted a Probable Cause Affidavit ("PCA"), *see* dkt, 34-1, and obtained a search warrant for the Aloda Residence on July 1, 2025, from a Marion County Magistrate Judge. Dkt. 36 at 1; Dkt. 34-1 at 15. Included in the PCA was a detailed account of the above information, including the drug distribution and firearms information Comstock provided about Clegg and the Aloda Residence. The PCA identified Comstock by name and stated he possessed large quantities of drugs that he intended to distribute.

Notably however, Officer Fankboner omitted from the PCA any information pertaining to Comstock's criminal history. For instance, he omitted that Comstock had numerous previous criminal convictions:

> 2022 conviction for Possession of Cocaine, a Level 6 Felony (49D28-2102 F5-003526);
>
> 2021 conviction for Possession of Methamphetamine, a Level 6 Felony (73D01-2110-F6-000426);
>
> 2021 conviction for Possession of Methamphetamine, a Level 6 Felony, and Carrying a Handgun Without a License, a Class A Misdemeanor (73D01-2104-F5-000027);
>
> Three separate 2018 charges of Obstruction of Justice, a Level 6 Felony (16C01-1806-F6-000825; 16C01-1805-F6-000647; 16C01-1803-F6-000315);
>
> 2018 conviction for Battery, a Level 6 Felony (16C01-1709-F5-000965); and
>
> 2013 conviction for Possession of Methamphetamine, a Class A Misdemeanor (49G14-1302-FD-009474).

Dkt. 34 at 5–6.

The PCA also did not state whether Comstock had previously provided reliable information, whether IMPD had promised or discussed any benefit, or whether his cooperation would be brought to a prosecutor's attention. Dkt. 34 at 6. The Magistrate did not question Comstock prior to authorizing the warrant. Dkt. 34 at 11.

IMPD officers executed the search warrant the day it was issued on July 1, 2025, and searched the Aloda Residence. Dkt. 36 at 1; *see* dkt. 34-1 at 16. IMPD officers found controlled substances, drug distribution materials, and firearms. Dkt. 36 at 2; *see* dkt. 34-1 at 16. A federal grand jury indicted Clegg on September 23, 2025.

## II. CONCLUSIONS OF LAW

### A. Probable Cause

The Fourth Amendment of the Constitution commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." That probable cause determination is a "practical, common-sense" one based upon the totality of the circumstances, and probable cause exists for a search warrant when those circumstances indicate even a fair probability that contraband or evidence of a crime will be found in a particular location. *United States v. Bacon*, 991 F.3d 835, 839 (7th Cir. 2021) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *United States v. Adams*, 934 F.3d 720, 725 (7th Cir. 2019). That showing requires neither absolute certainty nor even a preponderance of

the evidence. *Adams*, 934 F.3d at 725. When reviewing an issuing judge's conclusion that a warrant was supported by probable cause, "the district court need only evaluate whether the judge had a 'substantial basis' for concluding that probable cause existed" under the totality of the circumstances. *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014) (per curiam) (citing *Gates*, 462 U.S. at 238–39).

Clegg asks the Court to suppress all evidence seized in the search of his home and argues that the PCA did not establish a sufficient nexus between criminal activity and the Aloda Residence. Dkt. 34 at 6. Clegg presents his argument according to the factors set forth in *United States v. Bell*, 925 F.3d 362, 371 (7th Cir. 2019): (1) the level of detail the informant provided; (2) the extent of the informant's firsthand knowledge; (3) the degree to which the information has been corroborated; (4) the time between the events reported and the warrant application; and (5) whether the informant appeared before the magistrate judge.

Clegg argues all five factors. He attacks the level of detail and questions the firsthand knowledge, the degree of corroboration, and the timing of the warrant application, and emphasizes the informant did not appear before the Magistrate. Clegg argues the totality of the circumstances surrounding the PCA favor suppression because there was not a substantial basis to find probable cause to search Clegg's home. Dkt. 34 at 12. He argues that the affidavit established that Comstock had recently left the vicinity of Clegg's home and that Comstock was trafficking in methamphetamine but that it did not independently connect the trafficking to the evidence inside the home. Dkt. 34 at 11. The final

and essential link came only from Comstock, Clegg says, who had recently been caught and had the strongest incentive to attribute liability to someone else.

Conversely, the Government argues that the issuing Magistrate had a substantial basis to conclude that probable cause existed. Dkt. 36 at 2. The Government also notes that Comstock was a named informant rather than a confidential one, *id.* at 7, and maintains that "Comstock's criminal history and the circumstances of this case clearly show that he was a drug user and drug dealer that was stopped leaving a suspected drug house while the house was being surveilled by police for suspected drug dealing." *Id.* at 10.

The Court agrees with the Government. Clegg's arguments are overstated. The *Bell* factors do not favor suppression. Applying the totality of the circumstances test, *Bell*, 925 F.3d at 371, Comstock provided detailed, firsthand knowledge of the contraband in the Aloda Residence. Critically, Comstock's information corroborated some of IMPD's previous suspicions that there was drug activity afoot at the Aloda Residence.

The PCA is detailed and includes information as to IMPD's suspicions about the Aloda Residence, which arose *before* Comstock spoke with police. Comstock was a corroborator, not an initial source of the investigation. IMPD already had the Aloda Residence under surveillance for suspected drug activity. IMPD officers observed Comstock coming from the direction of the surveilled Aloda Residence and stopped him with a trafficking quantity of drugs on him. He said he had firsthand knowledge as to what was in the Aloda Residence, and his basis of knowledge was that he had just been inside the home. No significant

time passed between when Comstock was at the Aloda Residence, when he was arrested, and when he talked to police about the Aloda Residence. In other words, his memory was fresh.

Comstock implicated Clegg. He voluntarily told IMPD officers that he just received the drugs from Clegg at the Aloda Residence, as he had on prior occasions, and intended to distribute them and pay Clegg back. This admission may have passed some of the blame to Clegg, but it was also contrary to Comstock's own liberty interests. He also told IMPD that another person had just dropped off more drugs and that Clegg had guns in his house. The phone number that Comstock had programmed in his phone as "Chris" was the same number that made the domestic disturbance phone call from the Aloda Residence where a few weeks earlier Officer Fankboner recognized an individual named Jason Atkins, whom Fankboner had "previous narcotics related dealings with." Dkt. 34 at 3; Dkt. 34-1 at 6. Comstock also identified Clegg from a photo lineup.

Though Comstock did not personally appear before the Magistrate, he was a named informant, not a confidential source. This distinction matters. The Seventh Circuit has held that probable cause is absent where the affidavit in support of a search warrant relies on an informant, lacks detail, and completely omits information bearing negatively on the informant's credibility. *See, e.g. United States v. Glover*, 755 F.3d 811 (7th Cir. 2014); *United States v. Peck*, 317 F.3d 754 (7th Cir. 2003). However, "[f]or purposes of the probable cause inquiry, [the Seventh Circuit] has generally drawn a distinction between anonymous tips, on the one hand, and information provided by an eyewitness or victim to a

crime," affording victims and eyewitnesses a presumption of credibility not afforded other informants. *United States v. Geasland*, 694 F. App'x 422, 431–32 (7th Cir. 2017) (collecting cases), *cert. denied* 138 S. Ct. 699 (2018).

Further, the PCA provided sufficient information from which to assess Comstock's credibility. Officer Fankboner did not omit the circumstances giving rise to Comstock's involvement. Instead, he gave the Magistrate ample indication of Comstock's unlawful drug dealing activities and his incentive to implicate Clegg rather to deflect attention from himself, which aided in the evaluation of his credibility. The omission of Comstock's criminal history did not amount to a complete omission of information bearing negatively on Comstock's credibility.

In sum, when read as a whole, the PCA gave the Magistrate issuing the search warrant a "substantial basis" for finding probable cause that evidence of a crime was likely to be discovered at the Aloda Residence house. Accordingly, the motion to suppress is **DENIED**.

**B. Good Faith Exception**

Even if a substantial basis for finding probable cause was lacking—again, the Court finds it was not—the Government argues that Clegg's motion to suppress would be denied under the good faith exception. Dkt. 36 at 11–12. The Court agrees.

"[T]he exclusionary rule is designed to deter police misconduct. . . ." *United States v. Leon*, 468 U.S. 897, 916 (1984). Excluding evidence gained by an officer acting with objective good faith by obtaining a search warrant does not serve this purpose. *Id.* at 920. "An officer's decision to obtain a warrant is *prima facie*

evidence that he or she was acting in good faith." *United States v. Searcy*, 664 F.3d 1119, 1124 (7th Cir. 2011).

> A defendant can rebut the presumption of good faith only by showing (1) that the issuing judge abandoned his or her detached and neutral role, (2) the officers were dishonest or reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable.

*Id.* (citing *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007)). The defendant bears the burden of satisfying one of these exceptions. *Id.* Clegg does not argue that the issuing magistrate showed partiality. And he fails to prove that the remaining exceptions apply.

First, the search warrant was not plainly deficient. The same facts that convince the Court of a substantial basis for probable cause also show that it would not be unreasonable for a well-trained officer to conclude that probable cause existed. *See supra* Section II.A.

Second, the Court finds that Officer Fankboner was not dishonest or reckless in preparing the affidavit. Clegg argues that omissions of Comstock's criminal history show reckless disregard for the truth. Dkt. 34 at 14. As discussed above, the affidavit included concrete evidence of drug activity in connection with firearms and implicitly provided some information about Comstock's bias and his role as someone also engaged in drug dealing. An affiant need not include every detail of an investigation in their probable cause affidavit. *See United States v. McMurtrey*, 704 F.3d 502, 511 n.5 (7th Cir. 2013) ("The police need not report every dead end or dry hole in the investigation.").

Thus, the good faith exception would apply to allow admission of the evidence found in the warranted search of Clegg's home even in the event the search warrant affidavit failed to provide a substantial basis for a finding of probable cause.

**C. *Franks* Hearing**

The Supreme Court in *Franks v. Delaware*, 438 U.S. 154 (1978), recognized that a defendant may challenge the truthfulness of statements made in a search warrant application's affidavit. A search warrant may be invalid if the police obtain it by deliberately or recklessly providing false, material information or deceptive omissions to the issuing judge. *Bacon*, 991 F.3d at 841; U*nited States v. Hansmeier*, 867 F.3d 807, 813 (7th Cir. 2017). "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. But a defendant is entitled to an evidentiary hearing (a "*Franks* hearing") if he makes a substantial preliminary showing of specific intentional or reckless misrepresentations or omissions. *United States v. Santiago*, 905 F.3d 1013, 1025 (7th Cir. 2018); *United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019).

However, to obtain a *Franks* hearing, "the defendant must also show that if the deliberately or recklessly false statements were omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent." *Santiago*, 905 F.3d at 1025 (quoting *McMurtrey*, 704 F.3d at 509). "[I]f probable cause to issue the warrant would still exist even if the false statement or material omission were corrected, then no *Franks* hearing is

required." *Id.* (quoting *United States v. Carmel*, 548 F.3d 571, 577 (7th Cir. 2008)); *United States v. Mullins*, 803 F.3d 858, 862 (7th Cir. 2015) (courts "consider the affidavit, eliminating any false statements and incorporating omitted material facts, and determine whether probable cause existed" (cleaned up)); *see also Clark*, 935 F.3d at 563 (to obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that the material falsity or omission would alter the judge's probable cause determination).

For the same reasons stated above, Clegg's request for a *Franks* hearing is denied. He has failed to make the substantial preliminary showing that the omission of Comstock's criminal history was material to the Magistrate's determination of probable cause. Even had it included Comstock's lengthy criminal history, the PCA established a sufficient basis to find probable cause when considering the totality of the circumstances. *See Santiago*, 905 F.3d at 1025.

## III. CONCLUSION

Clegg's motion to suppress and request for *Franks* hearing is **DENIED**. Dkt. [35].

**SO ORDERED.**

Date: 11/25/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-Counsel of Record